51 CCPA
**Application of Robert P. ZELINSKI.**
**Patent Appeal No. 7115.**

United States Court of Customs and Patent Appeals.

April 9, 1964.

J. Arthur Young, Donald J. Quigg and L. Malcolm Oberlin, Bartlesville, Okl., for appellant.

Clarence W. Moore, Washington, D. C. (J. F. Nakamura, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, C. J., and RICH, MARTIN, SMITH and ALMOND, JJ.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of product claim 16, the sole claim on appeal, in appellant's application serial No. 721,293, filed March 13, 1958, entitled "Preparation of Block Polymers," assigned to Phillips Petroleum Company. Twelve process claims were allowed.

The invention relates to block copolymers, hereinafter defined. Claim 16 reads:

"A *block* copolymer consisting essentially of a copolymer block of 1,3-butadiene and styrene, said copolymer block containing *less than 10 weight per cent styrene,* and a homopolymer block of styrene." [Emphasis ours.]

The sole issue is obviousness in view of the prior art under 35 U.S.C. § 103.

It will be helpful at the outset to define terms. As appellant and the solicitor see to agree, polymers are classified in three types: linear, branched, and cross-linked. Linear polymers are simply straight chains of monomers connected in end-to-end relationship. Branched polymers consist of linear chains to which branches are appended, the branches themselves being linear polymers. Cross-linked polymers consist of linear polymer chains with short polymer chains interconnecting the linear chains. Although a convenient classification system, such polymer types are not mutually exclusive. Hybrids of branch and cross-linked poly-

mers exist wherein there are varying degrees of branching and cross-linking. And, as pointed out in the solicitor's brief, which quotes from *Polymers and Resins,* by Golding (Van Nostrand, 1959), branch polymers may partake of "linear properties when slightly branched," while they may become "more closely allied with cross-linked properties as the complexity of branching increases."

Block copolymers,[1] to which the instant invention is directed, are a kind of *linear* polymer wherein polymeric units called blocks are juxtaposed end-to-end. Block units may be homopolymers, such as polystyrene, or copolymers, such as poly-(butadiene-styrene).

Appellant's block copolymer, as claim 16 defines it, contains two kinds of block units: (1) copolymer of 1,3-butadiene-styrene (akin to commercial GRS—Government Rubber-Styrene) wherein styrene comprises less than 10% by weight of the unit; and (2) homopolymer of polystrene. The polymer consists of linearly repeating units of (1), supra, to which there is terminally attached units of (2), supra, the product being diagramatically illustrated in appellant's brief as follows (B=butadiene; S=styrene):

".... -B-B-B-B-B-S- .... -B-B-B-B- .... -S-B-B- .... -B-B-B+S-S-S-S-S- .... -S-S-S"

Appellant's brief states, "The practical effect of this [terminal] styrene block is to act as a built-in plasticizer for the polymer molecules, thus permitting them to flow more readily and producing a product characterized by great *ease of extrusion.*" (Emphasis ours.) Further, it is said that appellant's product can be compounded like natural rubber, is thermoplastic, shows no shrinkage when molded, exhibits greater hardness and resistance to shock than prior art butadiene-styrene copolymers such as GRS and non-linear GRS derivatives,

and is particularly useful as a wire coating where ease of extrusion is important.

Appellant's polymer is made by polymerizing butadiene and styrene monomers in a suitable solvent while rapidly stirring in the presence of organolithium catalyst, which is said to be "selective * * * for the polymerization of conjugated dienes." At the outset of polymerization, butadiene and styrene copolymerize to form a copolymer of more than 90% butadiene, less than 10% styrene. After exhaustion from the polymerization solution of monomeric butadiene, styrene then homopolymerizes linearly as a block unit with the already-formed butadiene-styrene block copolymer.

The Patent Office relies on two references:

Amos et al. 2,694,692 Nov. 16, 1954

Immergut et al., Die Makromolekulare Chemie, 18/19, pages 322–341 (1956), especially page 327.

The rejection is stated by the board as "unpatentable over the Immergut *et al.* publication considered in relation to the Amos *et al.* patent to which it refers."

Briefly, it is the Patent Office position that Amos et al., construed in the light of Immergut et al., teaches a *block* polymer of (1) butadiene-styrene copolymer with (2) styrene homopolymer, differing from appellant's claimed product only in the *percentage of styrene* in the butadiene-styrene copolymer block. Appellant claims less than 10%, Amos et al. shows minimally 20%. Such percentage difference is not considered patentably significant by the Patent Office since appellant has not shown that his polymer exhibits "unexpected properties."

Appellant's position is that Amos et al. do not teach a *block* polymer but rather a *graft* polymer, which appellant's brief states is a kind of branch polymer wherein the branches are "grafted" onto a linear polymer chain; that such conclusion flows from a consideration of a 1956

---

1. The solicitor's brief states, "The name block copolymer was proposed by Dr. G. F. Tuckett in a lecture at the Gordon Research Conference on Textiles in 1952. H. Mark, Textile Res. J., May, 1953, page 294, footnote column 2."

disclosure of Blanchette et al., infra, which teaches the production of *graft* polymers by a process similar to that of Amos et al. Appellant further argues that even if Amos et al. do teach block polymers, the 10% styrene content limitation is not taught by the art and patentably distinguishes thereover.

We shall first consider the references.

The Amos et al. patent, entitled "Method of Making *Linear* Interpolymers of Monovinyl Aromatic Compounds and a Natural or Synthetic Rubber" (emphasis ours) discloses "an improved method of interpolymerizing monovinyl aromatic compounds [e. g., styrene] with natural or synthetic [e. g., butadiene-styrene] rubber."

The patent states (emphasis ours):

"It is known to dissolve an unvulcanized natural rubber in *monomeric styrene* and thereafter heat the mixture to a polymerization temperature [to form a copolymer]. * * * However, in preparing such copolymers * * * the rubber * * * interpolymerizes * * * [with styrene] and tends to form *cross-linked* or highly *branched*-chain interpolymers * * *.

"We have now discovered that homogeneous substantially *linear* interpolymers * * * can readily be obtained by procedure which involves dissolving or intimately mixing an unvulcanized natural or synthetic rubber in a monomeric polymerizable monovinyl aromatic compound, so as to obtain a solution or mixure substantially free of insoluble gels, heating the solution to a polymerization temperature, *agitating* the solution during polymerization *so as to obtain a shearing action* throughout its mass until at least 10, preferably from 15 to 40 per cent by weight of the starting materials are polymerized * * *.

"It is important that the solution of the rubber and the polymerizable

monovinyl aromatic compound, e. g. styrene, be *agitated,* preferably with a *shearing action* throughout its mass, during the early stages, or first part, of the polymerization reaction in order to obtain homogeneous *linear* interpolymerization products which are *free,* or substantially free, of *cross-linked or highly branched-chain* interpolymer molecules."

Patentee's polymer starting materials include GRS "which * * * [is a copolymer] of from 20 to 50 per cent by weight of styrene and from 50 to 80 per cent by weight of butadiene," and also include "homopolymers of butadiene * * *." Amos et al. do not characterize their resulting polymer product as "block" polymers,[2] but call them "homogeneous substantially linear interpolymers."

Immergut et al. is a German chemical journal article entitled, in translation, "On the Graft- And Block-Copolymers From Synthetic and Natural Macromolecules," summarizing developments in the graft and block copolymer field as of 1956. The reference lists in tabular form various block copolymers known in the art, among which is listed "Poly(butadiene/styrene)—Polystyrene" naming as a supporting reference therefor the Amos et al. patent. The table in the reference lists "Poly(butadiene/styrene)" as "Block A," and "Polystyrene" as "Block B." From this, the Patent Office concludes that Amos et al. produce, in fact, a *block* copolymer.

Both the examiner and the board realize that neither Amos et al. nor Immergut et al. teach the "less than 10 weight per cent styrene" limitation of appellant's claim 16. The examiner stated in his Answer:

"This claim differs from the reference only in reciting that the butadene-styrene [sic] copolymer block contains less than 10 weight percent styrene. Attention is directed to the fact that the butadiene-styrene co-

2. The Amos et al. application was filed in 1950. See fn. 1, supra, to the effect that the term "block" was not used in the art until 1952.

polymer block of the reference may contain as low as 20 weight per cent styrene, as taught by Amos et al * * *. Since applicant has failed to show that a block copolymer of a butadiene-styrene copolymer and polystyrene containing slightly less than 10 weight per cent styrene in the butadiene-styrene copolymer block exhibits superior and unexpected properties over the same type block copolymer containing 20 weight per cent styrene in the butadiene-styrene copolymer block, the instant claim is not deemed to patentably distinguish over the disclosure of the reference."

The board added:

"The Amos *et al.* patent * * * indicates that the percentage of styrene in the butadiene-styrene block may be as low a 25% [sic] while claim 16 calls for a styrene percentage of less than 10% in the copolymer block. It is apparent from appellant's specification (and original claims) that the appellant attached merely an exemplifying significance to the 10% value which is now treated as a maximum. The record does not show that this 10% value coincides with any abrupt or unexpected deviation, in copolymer characteristics, from what could be expected from an extrapolation on the basis of the identified commercal copolymers of Amos *et al.* * * * or an interpolation on the basis of a homopolymer of butadiene * * * and these commercial copolymers."

In support of his argument that Amos et al. do not teach *block* polymers, appellant cited and the board considered an article in Journal of Polymer Science, Vol. XX, p. 317, by Blanchette and Nielsen (1956) which discloses polymerization of GRS with styrene resulting in *graft* polymerization. The board dismissed appellant's argument stating that "the Blanchette et al. publication does not describe experiments in which *attempts to secure a shearing agitation* are made, [and] we cannot assume that these experiments provide a significant indication of the nature of the Amos *et al.* product." (Emphasis ours.)

We think the issue to be decided is in two parts: (1) Do Amos et al. teach a *block* polymer, and (2) if so, are such polymers with "less than 10 weight per cent styrene" in the butadiene-styrene block obvious within the purview of the statute? We shall consider the points seriatim.

The gist of appellant's argument before this court is that Amos et al. got graft (branch) polymers in their process, notwithstanding that two years later Immergut et al. characterized such products as block polymers; that such conclusion is supported by Blanchette et al.; that the Immergut et al. classification is erroneous because made without the benefit of Blanchette's data; that the Amos et al. process, notwithstanding the teaching of "agitating the solution during polymerization so as to obtain a shearing action" in fact produces graft polymers since the agitation taught is not sufficient to prevent branching; and that had Amos et al. obtained block polymers "such a startling discovery would certainly have been mentioned by the patentees."

Having considered appellant's arguments, we nevertheless find no error in the board's decision. As we pointed out earlier (fns. 1 and 2, supra) the term "block copolymer" apparently was not used until 1952. Thus we consider without merit the argument that Amos et al., whose application was filed in 1950, did not so characterize their polymers. As to the Blanchette et al. article, we agree with the board that tests recited therein are of little value in resolving the issue here since process parameters are not stated by which a meaningful comparison with the products of Amos et al. can be made.[3] Finally, careful study of Amos et al. shows that without stronger evi-

---

3. We realize that the process of Blanchette et al. uses a "mechanical stirrer" from which appellant would have us conclude that such process is substantially that of Amos et al. However, the degree and duration of stirring is not disclosed nor

dence than has been urged upon us by appellant, we must assume that Amos et al. obtained a block polymer. The disclosure is replete with statements that their product is "linear," that such linearity results from "shearing action" during polymerization, that cross-linking and branching are eliminated by such "shearing action," and that absent such "shearing action" agglomerations of non-linear material are formed. Further, Immergut et al., whom appellant concedes to be recognized experts in the polymer field, consider the Amos et al. polymers to be block polymers. Appellant has submitted no proof to the contrary, notwithstanding the examiner's tacit invitation to do so in the final rejection. We do not feel that appellant has overcome the plain teaching of the references.

Finally, appellant also argues that even if Amos et al. do teach block polymers, no such polymers contain less than 10% styrene in the butadiene-styrene copolymer block. His brief states (emphasis ours):

> "The claim on appeal is further patentable in setting out that the copolymer block shall contain 'less than 10 weight per cent styrene.' Neither the Immergut et al. article nor the Amos et al. patent which is reported by Immergut et al. meets this limitation as to styrene content. It follows directly that the Immergut et al. article is not an anticipation under Section 102(a)[4] of the Statute, *even if Immergut et al.'s erroneously stated hypothesis be accepted at face value.*
>
> "The Board held, however, that the styrene limitation did not distinguish patentably over Immergut et al. because Zelinski provided no tests comparing the 10 per cent styrene block copolymer with one containing 25 per cent, and did not show that the 10 per cent value co-

incided with any abrupt or unexpected deviation in copolymer characteristics * * *.

> "We believe that no such comparison is required. It would be idle for Zelinski to compare a *block* copolymer of 10 per cent styrene content with one of 25 per cent styrene content for *there is no block copolymer* of 25 per cent styrene content in the prior art, but only *graft* copolymers. This being true, the *fundamental distinction* in the claims over the prior art is the recitation of the *block* copolymer structure. The recitation of styrene content is necessary simply to distinguish over the fortuitous and incorrect naming of a block copolymer in the Immergut et al. article and prevent this article from being an anticipation under Section 102(a) of the Statute."

Thus appellant does not seriously contend that his 10% styrene limitation is patentably significant per se vis-a-vis the higher percentage styrene products of the art. The board as quoted, supra, saw no patentable significance, absent a showing of unexpected properties, in a polymer of (1) block butadiene-styrene copolymer and (2) block polystyrene, in which styrene in the copolymer block (1) is in percentage between that of GRS ($\sim$20%) and polybutadiene (0%), a range inclusive of that claimed by appellant. We agree, pointing out that Amos et al. teach, at least impliedly, that their linear polymer, like appellant's possesses properties of extrudability superior to non-linear butadiene-styrene copolymers. The patentees state (emphasis ours):

> "Although, such non-uniform interpolymer products of styrene and rubber [i. e., branched and cross-linked products] can usually be brought to a state of homogeneity, or rendered soluble in toluene, by mechanically working or compounding

are other parameters from which such conclusion is justified.

4. Whether Immergut et al. is an "anticipation" under Section 102(a) is not in issue. Appellant himself states earlier in his brief, "This is a rejection on obviousness under Section 103 of the Statute. The Board made no rejection on anticipation under Section 102(a)."

the mass on a rubber mill, or on heated compounding rolls, such procedure is time-consuming and costly and the polymeric products thus processed are less suitable for many purposes, e. g. *for extrusion* or *injection molding* operations, than is desired, because of excessive molecular breakdown during the milling operation."

Appellant has failed to show anything unobvious in the styrene content limitation of the claim.

The decision of the board is affirmed.

Affirmed.

MARTIN, J., sat but did not participate in decision.